**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION**

| | |
|---|---|
| **DONALD W. HICKS, SR.,**<br><br>      **Plaintiff,**<br><br>    v.<br><br>**COMMISSIONER OF SOCIAL SECURITY,**<br><br>      **Defendant.** | **Case No. 2:09-cv-1001**<br><br>**Judge Peter C. Economus**<br><br>**MEMORANDUM OPINION AND ORDER** |

This matter is before the Court for consideration of the February 2, 2011 Report and Recommendation (Dkt. 23). In her Report and Recommendation, the Magistrate Judge recommended that the Court affirm the decision of the Commissioner of Social Security ("Commissioner"). Plaintiff filed Objections to the Report and Recommendation on February 11, 2011 (Dkt. 24), maintaining that the Magistrate Judge erred in (1) considering the treating physician testimony of Dr. A. Gollamudi and (2) finding that the ALJ adequately considered the combined effects of Plaintiff's impairments. For the following reasons, Plaintiff's Objections are **OVERRULED** and the Report and Recommendation is **ADOPTED**.

**I.**    **Background**

    **A.**    **Relevant Facts**[1]

        *1.*    *Mental Impairments*

Plaintiff seeks supplemental security income as a result of depression, anxiety, back pain, and chronic bronchitis. Various physicians have treated Plaintiff for his mental impairments. Dr. Wright treated Plaintiff for approximately one year beginning in April 2001. (R. at 648–57.)

---

[1] In her Report and Recommendation, the Magistrate Judge provided a thorough description of the record evidence in this case, including medical evidence and expert testimony, as well as the Commissioner's decision. (Report & Recommendation 2–18, Dkt. 23.) On the whole, Plaintiff's Objections do not challenge the Magistrate Judge's description of the evidence. Accordingly, the following section will provide only a brief summary of the relevant evidence.

Plaintiff reported nervousness and Dr. Francis Wright diagnosed him with depressive disorder. (R. at 656–57.) Despite Plaintiff's reported nervousness, Dr. Wright's notes after April 2000 reflect that Plaintiff felt better on his medication. (R. at 652–55.)

The record contains various opinions from Dr. Wright regarding Plaintiff's ability to work. The Magistrate Judge summarized these opinions as follows:

> On April 24, 2000, Dr. Wright opined that Plaintiff was unemployable. (R. at 645.) In June 2000, Dr. Wright filled out a questionnaire regarding Plaintiff's work-related functioning. (R. at 143–47.) Dr. Wright concluded that Plaintiff was incapable of performing a number of work related categories. (R. at 144–46.) These categories included being prompt and regularly attending work; responding appropriately to supervisors; withstanding pressures of normal work productivity; sustaining attention and concentration; behaving in an emotionally normal matter; and performing work activities within a schedule. (Id.) Dr. Wright noted that Plaintiff was under stress from attempting to raise his children and was irritable because of his insomnia. (R. at 146.) In a June 2001 letter, Dr. Wright reported that although Plaintiff was doing quite well on his medication, it was doubtful Plaintiff would be able to hold down a job. (R. at 648.)

(Report & Recommendation 5, Dkt. 23.)

Dr. Gollamudi treated Plaintiff from April 2003 until November 2005. (R. at 610–43.) In April 2003, Plaintiff was feeling depressed due to the death of his mother and aunt, and reported attempting to burn his house down. (R. at 638.) Dr. Gollamudi diagnosed Plaintiff with anxiety and adjustment disorder. (R. at 636, 640.) Despite this April 2003 incident, the bulk of Dr. Gollamudi's treatment notes reflect relatively normal mental status examination findings and indicate that medication was helping Plaintiff. (R. at 610–37.)

Dr. Gollamudi filled out a form evaluating Plaintiff's ability to work on November 1, 2005. (R. at 606–09.) As the Magistrate Judge described:

> Dr. Gollamudi concluded that Plaintiff had moderately severe or severe impairments in all of the work related categories listed in the questionnaire. (R. at 606–08.) These categories included following instructions; independently performing routine repetitive tasks; sustaining attention; responding to time limits; relating to supervisors and coworkers; and tolerating the stress of a work environment. (R. at 607–08.) Dr. Gollamudi diagnosed Plaintiff with

2

>posttraumatic stress disorder, bereavement, and polysubstance dependence in remission. (R. at 608.) Dr. Gollamudi opined that Plaintiff's condition was fair, but that his physical health and life stressors exacerbated his emotional condition. (*Id.*) Furthermore, Dr. Gollamudi commented that Plaintiff had been unable to work for at least three years due to physical injuries and emotional problems, but opined that with optimal progress Plaintiff might be able to work in a year. (R. at 609.)

(Report & Recommendation 7, Dkt. 23.)

Dr. Mary Beuvine[2] provided expert testimony at the January 2006 administrative hearing. (R. at 837–49.) In addition to providing her own conclusions regarding Plaintiff's abilities, based on her review of the record, Dr. Beuvine also commented on Dr. Gollamudi's evaluation. The Magistrate Judge described:

>Dr. Beuvine noted that the diagnoses within Dr. Gollamudi's November 2005 evaluation, as well as the severity of the evaluations, were not consistent with his treatment notes. (R. at 842, 844.) Furthermore, she found from Dr. Gollamudi's evaluations that it appeared that Plaintiff had become worse with treatment, but that this was not indicated in his treatment notes. (R. at 846.) In attempting to reconcile Dr. Gollamudi's evaluation and treatment notes, Dr. Beuvine recognized that Dr. Gollamudi was factoring in the pain from Plaintiff's physical conditions. (R. at 844.) She opined that "maybe he felt that [Plaintiff's physical condition] contributed to the limitations." (Id.) Nevertheless, Dr. Beuvine also stated, "[i]t's difficult for me to come to terms with what the actual treating notes say and how his psychiatrist evaluated him." (Id.)

(Report & Recommendation 15, Dkt. 23.)

Plaintiff has also received numerous state agency evaluations concerning his mental impairments. Psychologist Mary Ann Jones, Ph.D., evaluated Plaintiff twice. During her 1998 evaluation of Plaintiff, Dr. Jones concluded that Plaintiff was "semi-dependent to reasonably autonomous," and could perform one to two step tasks, but that he could do so only with "interference from psychologically based symptoms." (R. at 89–90.) Following a 2003 examination, Dr. Jones found that Plaintiff's ability to relate to others, follow directions, and

---

[2] Both Plaintiff and the ALJ identify Dr. Buevine as Dr. Buban.

3

withstand pressures were all impaired, but did not indicate to what level of severity. (R. at 407–08.) Dr. Jones assigned a GAF of 50,[3] but also found Plaintiff to be reasonably autonomous and indicated that Plaintiff was not invested in the examination. (R. at 406–08.) Additionally, Drs. Guy Melvin, Kristen E. Haskins, and John R. Williams provided reviewing physician opinions. Drs. Melvin and Williams recognized that Plaintiff's mental impairments caused some moderate restrictions, but found that his restrictions did not meet the listing requirements of 20 C.F.R. Part 404, Subpart P., Appendix 1. (R. at 106, 529.) Dr. Williams also considered Plaintiff's Mental Residual Functional Capacity ("RFC") and concluded that the only area in which Plaintiff was markedly limited was his ability to relate to the general public. (R. at 533.) Dr. Haskins opined that Plaintiff's mental impairments were not severe. (R. at 423.)

### 2. *Physical Impairments*

Plaintiff also maintains that he is disabled due to physical impairments, including pain in his back and right hand. Plaintiff's treating physician, Dr. Scott Shaw, opined in 2003 and 2004 that Plaintiff was unemployable due to the restrictions from his physical impairments.[4] (R. at 539–40, 646–47.) Drs. Ray Guy, Robert Weisenburger, Arthur Sagone, however, all issued reviewing physician opinions indicating that Plaintiff was physically capable of at least light work, with some restrictions. (*See* R. at 91–98, 111–19, 409–16.) Finally, Dr. Damian Danopulos, although not offering a work capacity range, performed an examination of Plaintiff in which he indicated that Plaintiff's "ability to do any work-related activities like handling

---

[3] "[A] GAF score between 41 and 50 reflects 'serious symptoms such as suicidal thoughts, severe obsessive rituals, or other serious impairments in social, occupational or school functioning.'" *Hash v. Comm'r of Soc. Sec.*, 309 F. App'x 981, 988 n.1 (quoting American Psychiatric Association, Diagnostic & Statistical Manual of Mental Disorders 30 (4th ed. 1994)).

[4] Plaintiff raises no specific objection regarding the ALJ's rejecting of Dr. Shaw's opinion.

4

objects, walking, lifting, [and] carrying is restricted," by his back problems and right hand weakness. (R. at 393–97.)

### B. The Administrative Law Judge's Decision

In September 2006, the Administrative Law Judge ("ALJ") issued a decision, which the Commissioner later adopted, finding that Plaintiff was not disabled for the purposes of the Social Security Act. (R. at 18–41.) Within the decision, the ALJ concluded that Plaintiff has several severe impairments including lumbosacral arthrosis with associated pain, limited use of right hand due to remote knife wound, residual effects of remote bullet wound with bullet lodged near spine, hypertension, anemia, and affective disorder with anxiety, but that these severe impairments do not meet a listing requirement within the meaning of the Regulations. (R. at 39–40.)

After reviewing the medical evidence, the ALJ found Plaintiff capable of light work, but with the following restrictions:

> [N]o more than simple repetitive tasks; the opportunity to sit or stand an added ten-to-fifteen minutes per hour in addition to normal breaks at his convenience and need not be consecutively; no use of foot pedals, leg controls or similar controls involving the lower extremities; may use a cane for ambulation and/or standing; occasional contact with co-workers and supervisors, but not in isolation; no contact with the general public as a work requirement; no production quotas, such as piecemeal work; only occasional bending forward normally but can frequently bend forward to 45 degree angle by locking the spine by slight backwards extension and then bend forward 45 degrees using the hips, and if needed, using the knee to assist; no fine manipulation or strenuous gripping with the right hand but can hold objects such as a pen or pencil; no dexterity such as keyboarding or typing.

(R. at 34.)

The ALJ weighed the medical opinion evidence in reaching his decision. The ALJ provided a summary of his conclusions after providing a detailed summary of the evidence:

> The varying opinions of medical sources in the record document a potential functional capacity ranging from no "severe" mental impairment (as reported by

5

>evaluating psychologist Dr. Haskins) and a physical capacity for medium exertion (as reported by evaluat[ing] physicians Drs. Sagone and Weisenburger) to total disability (as reported by treating sources Drs. Gollamudi, Shaw, and Wright) with the assessments of examining physicians Drs. Ray and Danopulos, examining psychologist Dr. Jones, and psychological expert witness Dr. [Beuvine] falling between those extremes.
>
>For the reasons previously cited, the conclusions of Drs. Gollamudi, Shaw, and Wright that the claimant is disabled from all work activity are rejected as being unsupported by substantial evidence. The findings of Drs. Ray, Danopulos, Jones, and [Beuvine] are considered to represent the most accurate assessment of the claimant's actual functioning capacity and are accepted as a credible compromise of the widely divergent opinions concerning the claimant's functional capacity contained in the record. Those medical sources provided findings which indicate that the claimant could do a reduced range of light exertion.

(*Id.*)

### C. The Report and Recommendation

The Magistrate Judge found that substantial evidence supported the ALJ's decision and that the ALJ did not commit procedural error. First, applying the law for evaluation of treating physician opinions, the Magistrate Judge concluded that substantial evidence supported the ALJ's rejection of Plaintiff's treating physician opinions. (Report & Recommendation 20–27, Dkt. 23.) Second, the Magistrate Judge found that the ALJ adequately considered the combined effects of Plaintiff's physical and mental impairments. (*Id.* at 27–30.)

## II. Standard of Review

If a party objects within the allotted time to a report and recommendation, the Court "shall make a *de novo* determination of those portions of the report or specified proposed findings or recommendations to which objection is made." 28 U.S.C. § 636(b)(1); *see also* Fed. R. Civ. P. 72(b). Upon review, the Court "may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge." 28 U.S.C. § 636(b)(1).

The Court's review "is limited to determining whether the Commissioner's decision 'is supported by substantial evidence and was made pursuant to proper legal standards.'" *Ealy v. Comm'r of Soc. Sec.*, 594 F.3d 504, 512 (6th Cir. 2010) (quoting *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007)); *see also*, 42 U.S.C. § 405(g) ("The findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive."). Put another way, a decision supported by substantial evidence is not subject to reversal, even if the reviewing court might arrive at a different conclusion. *Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986). "Substantial evidence exists when 'a reasonable mind could accept the evidence as adequate to support a conclusion [and] . . . presupposes that there is a zone of choice within which the decision-makers can go either way, without interference by the courts.'" *Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 406 (6th Cir. 2009) (internal citation omitted). Even if supported by substantial evidence, however, " 'a decision of the Commissioner will not be upheld where the [Commissioner] fails to follow its own regulations and where that error prejudices a claimant on the merits or deprives the claimant of a substantial right.' " *Rabbers v. Comm'r of Soc. Sec.*, 582 F.3d 647, 651 (6th Cir. 2009) (quoting *Bowen v. Comm'r of Soc. Sec.*, 478 F.3d 742, 746 (6th Cir. 2007).

### III. Analysis

#### A. Medical Opinion Evidence

Within his first Objection, Plaintiff maintains that the Magistrate Judge and ALJ erred in the weight they afforded the treating physician opinions of Dr. Gollamudi. (Objections1–4, Dkt. 24.) Plaintiff also challenges the Magistrate Judge's use of Dr. Buevine's testimony for the purposes of casting doubt on Dr. Gollamudi's opinion.

### *1.* *Dr. Gollamudi*

As the Magistrate Judge noted,[5] the United States Court of Appeals for the Sixth Circuit has outlined the proper approach to treating physician opinions:

> The ALJ "must" give a treating source opinion controlling weight if the treating source opinion is "well-supported by medically acceptable clinical and laboratory diagnostic techniques" and is "not inconsistent with the other substantial evidence in [the] case record." [*Wilson* v. *Comm'r of Soc. Sec.*, 378 F.3d 541, 544 (6th Cir. 2004)] (quoting 20 C.F.R. § 404.1527(d)(2)). On the other hand, a Social Security Ruling explains that "[i]t is an error to give an opinion controlling weight simply because it is the opinion of a treating source if it is not well-supported by medically acceptable clinical and laboratory diagnostic techniques or if it is inconsistent the with other substantial evidence in the case record." Soc. Sec. Rul. 96-2p, 1996 WL 374188, at *2 (July 2, 1996). If the ALJ does not accord controlling weight to a treating physician, the ALJ must still determine how much weight is appropriate by considering a number of factors, including the length of the treatment relationship and the frequency of examination, the nature and extent of the treatment relationship, supportability of the opinion, consistency of the opinion with the record as a whole, and any specialization of the treating physician. *Wilson*, 378 F.3d at 544; *see also* 20 C.F.R. § 404.1527(d)(2).

*Blakely*, 581 F.3d at 406. In other terms, although treating sources are generally given more weight than other sources, this is not the case in all circumstances. *See Cutlip v. Sec'y of Health & Human Servs.*, 25 F.3d 284, 287 (6th Cir. 1994) ("[Treating physician] opinions are only accorded great weight when they are supported by sufficient clinical findings and are consistent with the evidence."). Furthermore, certain issues, such as disability and a claimant's RFC, are ultimately reserved to the Commissioner. 20 C.F.R. § 404.927(e).

Finally, as the Magistrate Judge noted:

> Plaintiff is correct that, due to the nature of mental impairments, the diagnostic techniques that physicians in the field use are likely to be less tangible than those in other fields of medicine. *See Blankenship v. Bowen*, 874 F.2d 1116, 1121 (6th Cir. 1989). Nevertheless, this does not mean that an ALJ is required to accept the mental impairment opinions of a treating physician who relies solely on a plaintiff's subjective complaints. *See Ferguson v. Comm'r of Soc. Sec.*, --- F.3d --

---

[5] Plaintiff has not objected to the treating physician law the Magistrate Judge applied. (Objections 2, Dkt. 24.)

8

> --, 2010 WL 5185848, at *2–5 (6th Cir. 2010) (finding that an ALJ appropriately rejected the opinion of, and did not have to recontact, a treating psychiatrist when her opinion was based on "[claimant's] self-reported history and subjective complaints [and was] not supported by objective medical evidence . . ."); *see also* SSR 96-7p, 1996 WL 374186 (July 2, 1996) (describing the process by which the Commissioner evaluates the credibility of a claimant's "description of his or her physical or mental impairment(s)").

(Report & Recommendation 25, Dkt. 23.)

In his Objections, Plaintiff maintains that Dr. Gollamudi's opinion is supported by objective medical evidence and is consistent with the record. (*Id.* at 4.) The Court disagrees. First, Dr Gollamudi's treatment notes of Plaintiff do not support his opinions as to Plaintiff's ability to perform work. Dr. Gollamudi's November 2005 evaluation found that Plaintiff was moderately severe to severely impaired in all work related abilities listed on the questionnaire form, and that Plaintiff was unable to work. (R. at 606–09.) Even recognizing the less tangible nature of mental impairment, however, Dr. Gollamudi's treatment notes provide no strong indication that Plaintiff's mental impairments reached this level of severity.[6] Dr. Gollamudi's notes certainly indicate that Plaintiff was suffering from anxiety. The ALJ, however, found that Plaintiff had the severe impairment of affective disorder with anxiety. Although Plaintiff might not have been "doing well," as he adamantly contends in his Objections, the bulk of Dr. Gollamudi's treatment notes indicates that Plaintiff was responding appropriately, and feeling better, on his medication. (*See* R. at 610–37.)

Even assuming that Dr. Gollamudi's opinion is supported by objective findings, it is still inconsistent with other substantial evidence, and, therefore, not entitled to controlling weight. As the Magistrate Judge found, "the assessments of the state agency physicians, as well as the

---

[6] As the Magistrate Judge concluded, Dr. Wright's opinions are similarly unsupported. (*See* Report & Recommendation 24, Dkt. 23.)

9

medical expert, all appear less severe than the opinions of [Dr.] Gollamudi . . . ."[7] (Report & Recommendation 24.) Dr. Haskins found that Plaintiff did not have any severe mental impairment, while the opinions of Drs. Guy and Williams indicated that Plaintiff's mental restrictions did not meet a listing requirement. (*See* R. at 106, 423, 529.) Dr. Williams only found Plaintiff to be "markedly limited" in his ability to relate to the general public. (R. at 533.) Moreover, after reviewing all of Plaintiff's mental impairment record evidence, Dr. Beuvine provided medical expert testimony that Plaintiff could perform simple tasks with no production quotas. (R. at 846.) Dr. Beuvine's testimony also cast doubt on the supportability of Dr. Gollamudi's evaluation. (*See, e.g.*, R. at 844.) Finally, to the extent Dr. Gollamudi's opinions were based on Plaintiff's subjective complaints,[8] the record provides various reasons to doubt the credibility of Plaintiff, as both the ALJ and Magistrate Judge detailed.

Based on these circumstances, the Court finds that the ALJ was not required to give controlling weight to Dr. Gollamudi's opinions. Furthermore, based on the widely diverging medical opinions in this case, the Court finds that evidence provided the ALJ a reasonable

---

[7] Plaintiff's Objections contain a brief paragraph mentioning Dr. Jones' examinations, and implying that her opinions support a finding that Plaintiff is unable to work. (Objections 4, Dkt. 24.) The Court finds the opinions of Dr. Jones to be less conclusive than Plaintiff suggests. Dr. Jones found that Plaintiff had impairments in work related areas, but did not provide an ultimate assessment of how severe these impairments were. (R. at 407–08.) Although Plaintiff did assign a GAF of 50 following her second examination, suggesting serious impairments, she assigned Plaintiff a higher GAF after her first evaluation, suggesting only moderate impairments. (R. at 89, 407.) Additionally, Dr. Jones found that Plaintiff was only minimally invested during his second examination. (R. at 408.) Regardless, as the Magistrate Judge noted, the ALJ had various other reasons and evidence to support his rejection of Dr. Gollamudi and his ultimate mental RFC finding. (*See* Report & Recommendation 23 n.11, Dkt. 23.)

[8] The Court agrees with the Magistrate Judge that, because of the lack of other clear supporting evidence, it appears that Dr. Gollamudi's opinions are based at least in part on Plaintiff's subjective complaints. The ALJ was not required to accept Dr. Gollamudi's assessment of Plaintiff's credibility. *See Ferguson v. Comm'r of Soc. Sec.*, 628 F.3d 269, (6th Cir. 2010) ("[T]o the extent the ALJ 'rejected' [the treating physician's] 'opinion of disability,' he did so not because the bases for her opinion were unclear to him, but because those bases, Ferguson's self-reported history and subjective complaints, were not supported by objective medical evidence.")

ground for rejecting the extreme opinions of Dr. Gollamudi and accepting more moderate opinions regarding Plaintiff's limitations.

### 2. *Dr. Buevine*

Within his first objection, Plaintiff appears to also maintain that the Magistrate Judge and ALJ erred because they considered the testimony of the medical expert, Dr. Buevine, in rejecting the opinions of Dr. Gollamudi.  Dr. Buevine never examined Plaintiff, but provided testimony at the administrative hearing based on her review of the record related to Plaintiff's mental impairments.  Certainly, pursuant to the applicable regulations, the Commissioner will *generally* give more weight to examining and treating medical sources then to reviewing medical sources. 20 C.F.R. § 416.927(d).  Nevertheless, contrary to Plaintiff's implication, the ALJ was permitted to consider Dr. Buevine's expert testimony to assist in reconciling the medical evidence.  *See Massey v. Comm'r of Soc. Sec.*, No. 09-6527, 2011 WL 383254, at *2–3 (6th Cir. Feb. 7, 2011) (finding that the ALJ did not err in failing to give controlling weight to a treating physician where the ALJ relied on a medical expert's hearing testimony, which cast doubt on the treating physician opinion).

Furthermore, Plaintiff's characterization of Dr. Beuvine's testimony is somewhat misleading.  Dr. Beuvine did not simply testify that she found Dr. Gollamudi's treatment notes difficult to read.  (*See* Objections 3–4, Dkt. 24.)  Rather, a fair reading of Dr. Beuvine's testimony indicates that she was unable to reconcile Dr. Gollamudi's treatment notes with Dr. Gollamudi's evaluation, and felt that the evaluation was more severe than the treatment notes indicate Plaintiff's condition was.  (*See, e.g.*, R. at 844.)  The ALJ was justified in considering this testimony when evaluating the weight he should to Dr. Gollamudi's opinions.

B. **Consideration of Combined Impairments**

Plaintiff also maintains in his Objections that the ALJ failed to properly consider the combined effects of Plaintiff's physical and mental impairments. The Court finds this argument unavailing. Plaintiff is correct, and the Magistrate Judge recognized, that once a severe impairment is found the Commissioner must consider the combined effect of all impairments in reaching a disability determination. *See* 20 C.F.R. § 416.923. Nevertheless, as the Magistrate Judge provided:

> [R]ead as a whole, it is evident that the ALJ's decision considers the combined effects of Plaintiff's impairments. The ALJ began his decision by performing a thorough review of both Plaintiff's physical and mental impairments, including the findings and opinions of the various medical sources. (R. at 20–32.) The ALJ then found that Plaintiff had severe impairments that were both mental and physical. (R. at 32–33.) In his assigned RFC, the ALJ included both exertional and non-exertional limitations. (R. at 34.) Specifically, the ALJ limited Plaintiff to light work, with various other physical limitations, and incorporated the medical expert conclusions with regard to Plaintiff's mental restrictions. (Id.) In posing a hypothetical question to the vocational expert at the administrative hearing, the ALJ included both Plaintiff's mental and physical limitations. (R. at 860–62.) Finally, the decision is devoid of any indication that the ALJ separated Plaintiff's impairments and considered, impairment by impairment, whether each individually rose to the level of a disability.

(Report & Recommendation 29–30, Dkt. 23.)

In maintaining that the Magistrate Judge erred in rejecting his argument that the ALJ failed to consider his combined impairments, Plaintiff focuses on a single sentence from the ALJ's decision. Specifically, when rejecting Plaintiff's treating physician opinions, the ALJ stated that Dr. Gollamudi "attributed the claimant's inability to work to a combination of physical and mental impairments." (R. at 31.) The Court does not doubt that the combined effects of a claimant's mental and physical impairments may cause those impairments to worsen. In this case, however, the record does not suggest that Dr. Gollamudi was involved in the treatment of Plaintiff's physical impairments. Accordingly, it is highly likely Dr. Gollamudi's

conclusions as to Plaintiff's physical impairments were based only on Plaintiff's subjective complaints. Even assuming that the ALJ should not have rejected Dr. Gollamudi's evaluation for this reason, as detailed above, the ALJ had a number of appropriate reasons to reject Dr. Gollamudi's opinions. Because the ALJ's decision, taken as a whole, demonstrates that he considered the combination of Plaintiff's mental and physical impairments, the Court is unwilling to conclude that the ALJ erred for this reason.

## IV.     Conclusion

For the reasons outlined above, and the reasons set forth in the Magistrate Judge's February 2, 2011 Report and Recommendation, the Court concludes that substantial evidence supports the ALJ's decision. Accordingly, Plaintiff's Objections are **OVERRULED** and the Report and Recommendation is **ADOPTED**. The Court **AFFIRMS** the decision of the Commissioner of Social Security.

**IT IS SO ORDERED.**

                                                                **/s/ Peter C. Economus  -  March 25, 2011**
                                                                **UNITED STATES DISTRICT JUDGE**